UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| EDEENA DAVIS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:16-CV-00140-JRG |
| | ) | |
| vs. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff's application for Disability Insurance Benefits under the Social Security Act was administratively denied following a hearing before an Administrative Law Judge ["ALJ"]. This is an action for judicial review of the Commissioner's decision denying benefits. The Plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 17]. The defendant Commissioner has filed a Motion for Summary Judgment [Doc. 21].

**I.  Standard of Review**

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact

for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Sec. of Health & Human Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

The applicable administrative regulations require the Commissioner to utilize a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

In this case, Plaintiff has only applied for Disability Insurance Benefits, alleging that she became disabled on January 22, 2013. In order to be eligible for those benefits, she must show that she was disabled prior to the date her insured status expires on December 31, 2017, her "Date Last Insured" ["DLI"]. The ALJ found that Plaintiff was not under a disability at any time since her date of alleged onset from January 22, 2013 through the date of his decision (Tr. 22). *See* 20 C.F.R. § 404.130; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## II. Evidence in the Record

Plaintiff was and is a younger individual. She has a high school education. She has past relevant work as an assembler, which is unskilled vocationally and requires medium exertion. (Tr. 22). She alleges she can no longer work due to depression, anxiety, and panic attacks. (Tr. 177).

The medical evidence is summarized in the Commissioner's brief as follows:

> On June 12, 2012, Plaintiff went to emergency room claiming to be exhausted due to not sleeping because her disabled husband kept her up at night and she was anxious over work (Tr. 228, 230). Thomas Metcalf, M.D., noted she appeared to be in "mild distress" but that her mood and affect were normal, she appeared normal and comfortable, and she was alert (Tr. 229-30). The doctor prescribed her a sleeping pill and noted that Plaintiff's mother was going to stay at Plaintiff's house to take care of her husband for the night (Tr. 229). Plaintiff had a prescription for a sedative to help her sleep (Tr. 228-29). Prior to discharge from the hospital, Plaintiff continued to appear and behave normal, and displayed a normal thought process, perception, and cognitive function (Tr. 236). She also demonstrated normal insight, judgement, and speech, and was oriented (Tr. 236).
>
> On June 15, 2012, Plaintiff started seeing Leilani VanHoy, a nurse practitioner, at Total Health Family Medicine (Tr. 261). Ms. VanHoy completed paperwork for leave under the Family and Medical Leave Act (Tr. 261). Plaintiff was "very against" taking an anti-anxiety medication, but Ms. VanHoy assured her a low dosage would be helpful (Tr. 262).
>
> Two weeks later, on June 28, 2012, Plaintiff reported that the anxiety medication was helping a little, but she did not like taking medication (Tr. 294). She also requested additional time off from work (Tr. 294). Ms. VanHoy noted Plaintiff was doing "much better," and seemed happier and calmer (Tr. 295). The dosage of her medication was .25 milligrams of Xanax and 10 milligrams of Celexa (Tr. 294). Ms. VanHoy prepared a noted [sic] excusing Plaintiff from work through

3

November 5, 2012 (Tr. 295). On September 19, 2012, Ms. VanHoy released Plaintiff to go back to work (Tr. 247). She stated that the anti-anxiety medication helped, despite not taking much, and she was ready to return to work (Tr. 256).

At a subsequent appointment, Ms. VanHoy noted that Plaintiff's mood was improved and she appeared less stressed after she was fired from her job (Tr. 300). On January 24, 2013, Plaintiff reported that after she returned to work in November 2012, she was written up for additional unexcused absences after leaving due to panic attacks "induced by her supervisors" (Tr. 303). She also reported being in good spirits and not having any panic attacks since she was fired (Tr. 303).

Adrian Buckner, M.D., prepared a psychiatric evaluation on September 16, 2013, noting Plaintiff was oriented; displayed appropriate behavior and an intact memory; and maintained adequate eye contact, normal conversation and speech, a congruent affect, and a linear thought process (Tr. 324). She also actively participated in the session and displayed goal-directed thought content, at least average intellect, and fair insight and judgment (Tr. 324).

Leilani VanHoy, a nurse practitioner, at Total Health Family Medicine, prepared a statement stating that due to bullying at Plaintiff's former job, her anxiety, acute stress, and panic attacks were a permanent condition when she is in a stressful, antagonistic situation similar to her former work environment (Tr. 246). The nurse stated that Plaintiff's condition improved when she did not have to deal with the hostile work environment (Tr. 246). Ms. VanHoy further opined she would continue to have increased anxiety, panic attacks, and stress response than normal (Tr. 246).

In January 2013 Plaintiff reported that Xanax helped her and she had "not had to take it much" (Tr. 254). Ms. VanHoy reported Plaintiff was overall doing much better, and seemed happier and calmer (Tr. 255).

Willard Sims, M. Ed., conducted a psychiatric evaluation on August 13, 2013, related to her disability application (Tr. 314-15). Mr. Sims opined Plaintiff had: a mild limitation in understanding and remembering; moderate limitation in sustaining concentration and persistence; no limitation in interacting with others; and mild limitation in adjusting and change. (Tr. 314-15). She was aware of normal hazards and took appropriate precautions (Tr. 314-15).

On August 20, 2013, P. Jeffrey Wright, Ph.D., a state agency psychological examiner, assessed Plaintiff with mild limitations in activities of daily living, no difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace (Tr. 67).

Plaintiff had a medication check on November 12, 2013, and she reported she stopped taking the prescribed Seroquel two weeks ago (Tr. 350). She reported having anxiety, but no panic attacks, depression, sadness, or crying spells (Tr. 350).

> She appeared oriented and calm, with appropriate behavior and mannerisms, an intact memory, good eye contact, and normal conversation (Tr. 350). She also maintained normal speech, linear thought process, a logical and goal-directed thought content, at least average intellect, and intact insight and judgment (Tr. 350).
>
> On December 11, 2013, Plaintiff reported "doing good" with the anti-depressant, and she denied anxiety, panic attack, depression, sadness, or crying spells (Tr. 346). On January 17, and February 5, 2014, she appeared in a stable mood and pleasant affect (Tr. 341, 343). Ms. Livermore suggested she join a book club, walking club, or gym as an outlet for her anger (Tr. 343). Her provider mentioned finding another job but Plaintiff stated she did not feel like she could work (Tr. 341).
>
> Plaintiff returned for medication management in February, April, and May 2014 (Tr. 336, 339). She continued to appear calm and oriented, with appropriate behavior concentration, speech, and though processes (Tr. 336, 339). On September 21, 2014, Gerry Livermore, a licensed social worker, opined Plaintiff had a difficult time maintaining stable content of thought and difficulty functioning or maintaining employment at the time (Tr. 360).
>
> In her Function Report dated July 1, 2013, she stated she went outside daily, drove a car, and shopped in stores for groceries twice a month for 45 minutes (Tr. 196). She also reported that she spends time with others daily and regularly goes to the library, doctor, and to see family (Tr. 197). She claimed that she sometimes needed someone to accompany her in public and that she could not be in stressful situations like heavy crowds (Tr. 197-98).

[Doc. 22, pg. 2-6].

On September 25, 2013, the ALJ conducted an evidentiary hearing. Plaintiff's testimony is summarized as follows:

> Plaintiff testified she worked at her last job for 10 years (Tr. 34). She stated she was severely bullied to the point where she took Family and Medical Leave Act for almost three months, but when she returned in November 2012, she continued to miss work due to panic attacks (Tr. 34-35). Finally, she was fired because she left work two to three times in December 2012 and January 2013 (Tr. 35). Since she left her job in January 2013, she claimed she continued to have panic attacks two to three times a week (Tr. 36-38).
>
> . . .
>
> Plaintiff claimed that she did not like to be around people and spent most of her time in her room at home (Tr. 38-39). She stated that she did go to her mother's house a lot (Tr. 39). Plaintiff also testified that she did "mostly" everything for her

5

> disabled husband, drove, helped clean the house and did laundry (Tr. 42-44). She stated she did not know if she could return to any job right now (Tr. 42).

[*Id.* at 5-6]. Plaintiff's mother and a family friend also gave testimony about Plaintiff's anxiety, depression, and overall history and behavior. (Tr. 45-56).

Following their testimony, Donna Jane Bardsley, a vocational expert ("VE"), testified. The ALJ asked the VE a hypothetical question involving an individual of Plaintiff's age, education, work experience, and the following residual functional capacity ("RFC"): no exertional limitations; the ability to understand and remember simple and detailed, but not multi-step detailed, tasks; sustained concentration and persistence for the above tasks with customary breaks over a full workday and full work week; make routine work-related decisions, but not executive decisions; interact appropriately with the public, supervisors, and co-workers, within the above restrictions; and set goals and adapt to infrequent workplace changes. (Tr. 59; 83-84). Based on this RFC, the VE testified there would be no impact on the hypothetical individual's ability to perform gainful employment. (Tr. 59).

The ALJ then proposed a second hypothetical to the VE based on Dr. Livermore's letter describing Plaintiff's traumatic experiences with her prior job, resulting in anxiety and panic attacks. (Tr. 358-60). The letter concluded that Plaintiff "has a difficult time maintaining a stable content of thought which would cause her to have difficulty functioning and/or maintain[ing] any type of gainful employment at this time." (Tr. 360). Based on this information, the VE replied these limitations would exclude all jobs. (Tr. 60). The ALJ then proposed a final hypothetical to the VE to include all of Plaintiff's testimony as well as the testimony of her mother and friend. (Tr. 60). The VE responded that the impact of this testimony would eliminate all potential jobs. (Tr. 60).

**III.  The ALJ's Findings**

On October 22, 2014, the ALJ rendered his decision. He first found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017.  He found that she had not engaged in any substantial gainful activity since January 22, 2013, the alleged onset date.  The ALJ next found that Plaintiff has the following two severe impairments: generalized anxiety disorder and depressive disorder (not otherwise specified).  (Tr. 13).

At Step Three of the evaluation process, the ALJ found that Plaintiff did not have any impairment or combination of impairments that meets or medically equals the severity of one of the listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18).  At this step, he explained his rationale in detail regarding the limiting effects of Plaintiff's mental impairments.  (Tr. 13-19).  The ALJ found that in activities of daily living, she has mild restriction.  In support of this finding, he noted that Plaintiff testified that "she does cooking, housecleaning, mowing, driving, grocery shopping, handling money, and caring for her personal needs."  (Tr. 18).  With respect to social function, Plaintiff has mild difficulties.  (*Id.*).  The ALJ explained that "[s]he reported that being in crowds bothers her and sometimes causes panic attacks.  She avoids crowds and stays to herself.  Dr. Whitehead stated that [she] does not have a limitation in her ability to interact with others." (*Id.*).  Concerning concentration, persistence, and pace, the ALJ found that Plaintiff has moderate difficulties.  He noted that "Dr. Whitehead indicated [she] has a moderate limitation in her ability to sustain concentration and persistence."  (Tr. 19).  The ALJ then found that she has not experienced any episodes of decompensation that were of extended duration. (*Id.*).  He highlighted that Plaintiff "denied a history of inpatient mental health treatment and stated she received outpatient therapy once." (*Id.*).  Finally, the ALJ explained that "Dr. Whitehead stated [she] has a mild limitation in her ability to adjust to change and its requirements." (*Id.*).  As a result, the ALJ

7

found that because the plaintiff does not have any mental impairments that cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied. (*Id.*). Based upon the evidence, the ALJ also concluded that it failed to establish the presence of any "paragraph C" criteria. (*Id.*).

The ALJ then proceeded to announce his finding regarding the plaintiff's residual function capacity. He found as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can understand and remember simple but detailed, but no multi-step details, tasks; sustain concentration and persistence for the above tasks with customary breaks over a full workday and full workweek; make routine work-related decisions, but not executive decisions; interact appropriately with the public, supervisors, and co-workers, within the above restrictions; and set goals and adapt to infrequent workplace changes (as described in Exhibit 4A, page 10).

(*Id.*). These were the same capacity restrictions and descriptions given to the VE during the first hypothetical question. (Tr. 59). In making this determination, he stated that in consideration of Plaintiff's symptoms, he must first determine if her mental impairments, which could be shown by acceptable diagnostic techniques, could be expected to produce her symptoms. Then, he must determine whether Plaintiff is credible regarding the intensity, persistence, or functionally limiting effects of her symptoms where they cannot be substantiated by objective medical evidence. (Tr. 20).

The ALJ then summarized the objective medical evidence concerning her anxiety, depression, and panic attacks that he thoroughly reviewed previously. (Tr. 20-22). Concerning her anxiety and panic attacks, he found that "the record documents a generalized anxiety disorder lasting for a period of 12 continuous months and resulting in significant limitations of functioning." (Tr. 20). Plaintiff's symptoms improved enough for her to ask to be cleared for work in November

2012, but because her work environment did not improve, her signs and symptoms worsened. While Dr. Whitehead assessed her with generalized anxiety disorder in August 2013, in November 2013 Plaintiff denied panic attacks. Three months later, in February 2014 however, she reported having panic attacks again and her medication was increased. (*Id.*) In May 2014, Plaintiff reported that she was overall better but still having some depression and anxiety.

Regarding her depression, she was assessed with a depressive disorder in June 2012. Dr. White diagnosed a depressive disorder (not otherwise specified) in August 2013. Dr. Buckner similarly assessed major depression in September 2013. Additionally, in September 2013, Dr. Buckner assessed post traumatic disorder. (Tr. 324). However, when seen for medication management in December 2013, Plaintiff did not report having flashbacks, nightmares, or hypervigilance. Consistently, in February 2014, she denied nightmares or flashbacks. As such, the ALJ found that the assessed post-traumatic stress disorder was not a severe impairment.[1]

The ALJ next considered Plaintiff's subjective complaints of her mental impairments and the resulting symptoms she testified to during the hearing. He noted that her report of actual activities included the following: "cooking, housecleaning, mowing, driving, grocery shopping, handling money, and care for her personal needs." (Tr. 21). These activities, the ALJ found, do not indicate that she is significantly restricted, and that the activities were not limited to the extent one would expect based on her complaints of disabling symptoms and limitations. He highlighted that she has been prescribed and has taken appropriate medications for the alleged impairments, and that the records reveal that the medications have been relatively effective in controlling her symptoms. While Plaintiff has alleged various side effects from the medications, the ALJ noted that the medical records, such as office treatment notes, do not corroborate those claims. He found

---

[1] Plaintiff does not challenge the ALJ's treatment of the assessed post-traumatic stress disorder.

that the record reflected that she has made inconsistent statements regarding matters related to the issue of disability. (*Id.*). He concluded that as the record does not indicate mental symptoms of such severity as to interfere with her ability to perform unskilled work-related tasks, Plaintiff's allegations of disabling impairments and symptoms are not credible or supported by documentary evidence. (*Id.*).

The ALJ then considered the medical opinions contained in the record. He afforded great weight to the opinion and assessment of Dr. Whitehead, as they were consistent with the overall objective medical evidence of record. He noted that Dr. Whitehead indicated a moderate limitation in Plaintiff's ability to sustain concentration and persistence and a mild limitation in ability to understand and remember and to adjust to change. (*Id.*). The ALJ next considered Dr. Buckner's opinion from September 2013 that she has global assessment of functioning of 50. He afforded this opinion some weight, but found that the subsequent treatment records from Dr. Buckner indicate some improvement in her symptoms. (*Id.*).

Concerning the State Agency psychological consultants, Drs. Sachs and Wright, the ALJ gave each of their opinions great weight because they were consistent with the overall objective medical findings of record. He noted that while they were non-examining physicians, their opinions were given great weight as they were consistent with the objective findings from treating sources. (*Id.*).

Nurse VanHoy opined that Plaintiff's anxiety and other mental impairments will be permanent conditions when put in stressful, antagonistic situations such as those in her former work environment. The ALJ gave some weight to the opinion, demonstrated by limiting Plaintiff to unskilled work with the limitations described by Dr. Sachs. (*Id.*). The ALJ also considered the opinion of Plaintiff's therapist, Gerry Livermore, dated September 14, 2014. He gave this opinion

little weight as it was inconsistent with the objective evidence of record from Dr. Buckner's treatment notes from Frontier Health, Plaintiff's reports to Dr. Buckner, and other objective evidence. (*Id.*). Concerning the third party statements from Plaintiff's motion and friend regarding witnessing her symptoms of depression and anxiety, the ALJ found their testimony to be consistent with the impairments and the findings in his decision. (Tr. 22).

The ALJ then noted that the treatment providers and a consultative examiner issued global assessment of functioning ("GAF") scores, which were subsequently evaluated pursuant to SSR 06-03p. He highlighted that these scores provide only a snapshot opinion regarding the level of functioning at the time the score was rendered. Acknowledging that these scores do not generally provide a reliable longitudinal picture of mental health functioning, the ALJ found that the scores were generally consistent with the evidence of record and thus afforded them some weight as they provide additional support for the RFC. (*Id.*).

Finally, the ALJ concluded the evidence suggested that while Plaintiff is limited by her mental impairments, she is able to perform at least work of an unskilled nature. He found that the objective medical evidence of the record as well as the opinions of Drs. Sachs, Wright, and Whitehead support this conclusion. (*Id.*).

At step four, the ALJ found that Plaintiff is able to perform her past relevant work as an assembler. (*Id.*). He found that the VE's testimony was consistent with this conclusion. (*Id.*). This finding led to the ALJ's determination Plaintiff has not been under a disability from January 22, 2013 through the date of the decision. (*Id.*).

IV. **Analysis**

Plaintiff asserts the following alleged errors: (1) the ALJ erred in the weight given to the opinions of the treating sources; (2) the ALJ erred by finding Plaintiff's testimony was inconsistent

11

with the record; and, (3) the ALJ erred by finding Plaintiff could return to her past relevant work as an assembler.

### A. Weight Afforded to Treating Source Opinions

Plaintiff asserts that the ALJ erred in the weight he ascribed to her therapist, Gerry Livermore, who is a Licensed Clinical Social Worker. In a letter dated September 14, 2014, Livermore noted that "it is reasonable to conclude that [Plaintiff] has a difficult time maintaining a stable content of thought which would cause her to have difficulty functioning and/or maintain[ing] any type of gainful employment." (Tr. 360). She contends that this letter is the most credible of all opinion evidence in the record as it took into account not only Plaintiff's periods of improvements, but also her subsequent reversions. Additionally, Plaintiff alleges that the opinions by the other physicians and examiners were not complete as they did not appear to have the records from Nurse VanHoy that placed significant work limitations on her.

The ALJ considered Livermore's letter and gave it little weight. First, Livermore is a licensed clinical social worker, and while a medical source, Livermore is not an "acceptable medical source." *Titles II & XVI:II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernment*, SSR 06-03P, 2006 WL 2329939, *2 (S.S.A. Aug. 9, 2006). The ALJ was not required to give Livermore's opinion deferential weight. "According to Social Security Ruling 06–03p, even a licensed clinical social worker is not an acceptable medical source, and this designation may justify giving an opinion of an acceptable medical source greater weight." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 840 (6th Cir. 2016)(citing SSR 06-03P, 2006 WL 2329939, at *2, *5).

Second, the ALJ also gave good reasons why he did not afford Livermore's opinion greater weight, explaining that the opinion in the letter was inconsistent with Dr. Buckner's treatment notes from Frontier Health, as well as Plaintiff's report to Dr. Buckner. Livermore is an adult therapist with Frontier Health, where Dr. Buckner is also employed. Notably, while the letter outlined Plaintiff's subjective complaints of her mental impairments, it failed to take into account that her medical records reflect that her conditions improved and were generally managed with treatment. (Tr. 21, 238-39, 254, 256, 294-95, 302, 324, 335, 339, 341-43, 345-46, 350). As highlighted by the Commissioner, Plaintiff's treatment notes overall document that despite fluctuations in her reported mood, throughout her different examinations with various physicians she remained alert and oriented, and routinely displayed appropriate behavior, an intact memory, appropriate conversational skills, a linear thought-process and content, and fair insight and judgment. (Tr. 16, 324, 238-39, 254, 256, 294-95, 302, 324, 335, 339, 341-43, 345-46, 350).

Notably, Livermore was the only provider who found that Plaintiff may not be able to work. Even Nurse VanHoy, whom Plaintiff asserts placed the most significant work restrictions on her, did not recommend Plaintiff not work; rather, she limited Plaintiff to not working *more than* forty hours a week. (Tr. 269). That said, Nurse VanHoy warned of possible recurring panic attacks. The ALJ, in addressing Nurse VanHoy's restrictions, gave her opinion some weight in "limiting [Plaintiff] to unskilled work with the limitations described by Dr. Sachs." (Tr. 21). These limitations were incorporated into the ALJ's RFC finding. The ALJ also gave Dr. Buckner's opinion some weight but found that Plaintiff's symptoms and condition improved as noted in the treatment records from Frontier Health.

Plaintiff also argues that the non-examining physicians should have considered VanHoy's opinion. It appears as if they did. Indeed, Dr. Wright lists VanHoy's records in what he reviewed

13

in reaching his opinion, (Tr. 66), as does Dr. Sachs (Tr. 76-79), and Dr. Whitehead and Mr. Sims reference Nurse VanHoy in their report. (Tr. 312).

Plaintiff also challenges the weight the ALJ ascribed to the opinions of the State agency physicians and consultative examiners. "'State agency medical and psychological consultants ... are highly qualified physicians [and] psychologists ... who are also experts in Social Security disability evaluation,' and whose findings and opinions the ALJ 'must consider ... as opinion evidence.'" *Lee v. Comm'r of Soc. Sec.*, 529 F.Appx. 706, 712 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(e)(2)(i)). While all medical opinions are evaluated as discussed in 20 C.F.R. § 404.1527, opinions by consulting or non-treating doctors need not be evaluated in accordance with the treating physician rules outlined by the Sixth Circuit. See *Rudd v. Comm'r of Soc. Sec.*, 531 F.Appx. 719, 730 (6th Cir. 2013).

The State agency psychological consultants were Dr. Sachs and Dr. Wright, the opinions of whom the ALJ gave great weight. (Tr. 21). Dr. Wright assessed Plaintiff with mild limitations in daily living activities, no difficulties in maintaining social functioning, and only moderate difficulties in maintaining concentration, persistence and pace. (Tr. 67). The ALJ noted that these findings were consistent with the objective findings from the treating sources, as noted *supra*. Dr. Sachs noted Plaintiff could understand and remember simple and detailed tasks, sustain concentration and persistence over a full workday. Dr. Sachs opined that Plaintiff can do more routine work-related decisions, but not executive decisions, and that she could interact appropriately with the public, supervisors, and co-workers. The ALJ also noted that Dr. Sachs's opinion was also consistent with the objective findings from the treating sources. The ALJ came to this conclusion only after detailing all of the medical history and treatment of the Plaintiff and considering the many daily activities engaged in by Plaintiff.

14

Regarding consultative psychological examiner, Dr. Whitehead, the ALJ gave great weight to his opinion. Dr. Whitehead found that Plaintiff had moderate limitations in her ability to sustain concentration and persistence and mild limitations in ability to understand and remember and to adjust to change. (Tr. 21). The ALJ, in making his RFC determination, limited Plaintiff to simple and routine tasks, decisions, and interactions and to infrequent changes. (Tr. 19). He did so only after discussing the medical records in great detail. As a consequence, substantial evidence supports the ALJ's evaluation of the opinions of the medical sources in this case.

**B.  The ALJ's Treatment of Plaintiff's Subjective Complaints**

Next, Plaintiff asserts that the ALJ erred in finding that her subjective complaints of disabling impairments and resulting symptoms were inconsistent with the objective medical evidence as multiple examiners and physicians found her statements of symptoms and pain to be credible and consistent with her medical record and impairments.

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247. The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Soc. Sec. Ruling 16-3p; *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P, 2016 WL 1119029, *9 (S.S.A. Mar. 16, 2016).

> In making judgments about a claimant's credibility, the ALJ should consider:
>
> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;
(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;
(vi) Any measures [the claimant] use[s] or ha[s] used to relieve pain or other symptoms ...; and
(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). SSR 16-3p provides that an ALJ must consider the "entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record" and notes that the ALJ will "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Soc. Sec. Ruling 16-3p, 2016 WL 1119029, *5.

The ALJ concluded that the plaintiff's medical impairments could cause the symptoms she alleged but declined to credit her testimony regarding the intensity, persistence, and limiting effects of the symptoms to the extent they were inconsistent with the medical evidence, including the medical assessments, treatment notes, and her own testimony. While the ALJ did not discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3), he provided specific reasons for his credibility determination, including referencing the treatment notes and the plaintiff's testimony. He noted that her report of her daily activities were fairly extensive and indicate that she is able to get about in a manner that is not significantly restricted or would preclude unskilled work. (Tr. 21). For example, the ALJ noted that the plaintiff reported that she engaged in activities such as housecleaning, mowing, driving, grocery shopping, handling money, and caring for her personal

16

needs (Tr. 21).

The ALJ additionally noted the medical records indicate her prescribed medications have been relatively effective in controlling her symptoms. (*Id*). In June 2012, she was assessed with an anxiety state and acute stress reaction, but by November 2012, she asked to return to work. (Tr. 20). Dr. Whitehead diagnosed her with a generalized anxiety disorder, but by May 2014, with increased medication, she reported she was better, but still had some depression and anxiety. (Tr. 20). While Plaintiff has alleged various side effects from these medications, the records, such an office treatment notes, do not corroborate these allegations. Although the ALJ found that her mental impairments do cause limitations, he noted that the record did not support a finding that they were of such severity as to interfere with her ability to perform unskilled work-related tasks. The ALJ came to this conclusion after considering her daily activities, the effect of the medications on her ability to work, including their side effects, and her inconsistent statements in the record. As such, the ALJ's analysis of Plaintiff's testimony was supported by substantial evidence, and her arguments fail in this regard.

### C. Past Relevant Work

Finally, Plaintiff avers that the ALJ erred by finding that she could perform her past relevant work as an assembler. Specifically, she highlights that the VE testified that if the report of Ms. Livermore were considered, no jobs would exist that would be available to her. (Tr. 60). However, as discussed at length *supra*, the ALJ adequately and appropriately explained his reasoning for his treatment of the medical source opinions. Considering the remainder of the VE's testimony, the ALJ properly concluded that Plaintiff could return to her past relevant work as an assembler. (Tr. 22, 59-61).

## V. Conclusion

Based upon the above findings, the undersigned respectfully RECOMMENDS that Plaintiff's Motion for Judgment on the Pleadings [Doc. 17] be DENIED, and the Commissioner's Motion for Summary Judgment [Doc. 21] be GRANTED.[2]

Respectfully submitted,

s/Clifton L. Corker
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).